**C. E. SPRINGER, Appellant,**

v.

**SAHARA CASINOS COMPANY, Appellee.**

No. 3431.

Court of Civil Appeals of Texas.
Eastland.
Feb. 27, 1959.

Rehearing Denied March 20, 1959.

McMahon, Smart, Sprain & Wilson, Abilene, for appellant.

Wagstaff, Harwell, Alvis & Pope, Abilene, for appellee.

GRISSOM, Chief Justice.

Sahara Casinos Company sued C. E. Springer on his check for $500 which had been cashed by Sahara and payment stopped by Springer. Each filed a motion for summary judgment. Sahara's was granted and Springer has appealed.

Springer's first point is that the court erred in granting Sahara's motion because the check was given for gambling purposes and public policy prohibits its collection through the Courts of Texas.

The applicable rule is stated in 53 A.L. R.2d 372, as follows:

"Patrons of gambling establishments occasionally borrow money from the proprietor or secure cash or chips from him by giving a check or other instrument, so as to take part in the game. It has been recognized that under such circumstances the proprietor (who is regarded as a participant in the game) cannot recover from the borrower on the loan or because the check or other instrument has been dishonored."

Under this statement there is a discussion of cases pertinent to the question presented. In Braverman v. Horn, Cal.App., 198 P.2d 948, 949, it was held that a gambling house that cashed a patron's check "for the purpose of enabling the drawer to use the proceeds in a gambling game conducted" in Nevada could not collect the check through the California courts. The annotation following this case in 53 A.L.R.2d 373 contains this statement:

"The owner of a gambling house who honors a check for the purpose of providing a prospective customer with funds with which to gamble and who then participates in the transaction thus promoted by his act cannot recover on the check. Hamilton v. Abadjian, 1947, 30 Cal.2d 49, 179 P.2d

804, involving checks drawn on a California bank by the defendant and honored by the plaintiff's assignor, which checks had been drawn to procure money to engage in playing blackjack and to pay gambling debts incurred in Nevada, the courts of which state, which licenses gambling, follow the general rule, which prevails in California, and refuse to lend their process to recover losses in gambling transactions of the type here involved."

But in said annotation at page 374 it is pointed out that in the Hamilton case it was said that when no condition was imposed that the proceeds be used for gambling the checks were not necessarily unenforceable. In Jones v. Akin & Akin, Tex.Civ.App., 80 S.W. 385, it was held that checks given by Akin for money furnished by plaintiff for the purpose of betting on plaintiff's game, in which plaintiff participated, could not be collected through the courts when said facts were established as a defense. In Lloyd v. Robinson, Tex.Civ.App., 160 S.W. 128, it was held that checks given for money to be used in gambling could not be collected and the drawer could stop payment on the checks. In Reed v. Brewer, 90 Tex. 144, 37 S.W. 418, it was held that one who sells property to be used for an illegal purpose cannot enforce payment of notes given therefor. "A drawee cannot recover on checks given by a drawer as advancements to play on the drawee's gambling device." 20 Tex.Jur. 682. A lender cannot recover money loaned for use in a gambling game, where the lender participated and aided in the gambling. 20 Tex.Jur. 685. In Oliphant v. Markham, 79 Tex. 543, 15 S.W. 569, 571, the jury was instructed "that, if they found that Jones bought futures for Markham, and advanced money for that purpose * * * this rendered the transaction illegal, and plaintiff could not recover." Our Supreme Court said that the quoted instruction was correct. In Garza v. Richmond, Tex.Civ.App., 249 S.W. 889, it was held that checks cashed by the plaintiff for the purpose of gambling at a table

run by plaintiff could not be collected through the Courts of Texas. In 24 Am. Jur. 452, it is said that illegality of consideration is a good defense between the parties in all actions founded on obligations given in consideration of a gambling debt. See also 24 Am.Jur. 470, 471. In Seeligson v. Lewis & Williams, 65 Tex. 215, Lewis & Williams sued Seeligson on notes executed by him. Seeligson's defense was that there was no consideration because the notes were given for broker's fees and losses incurred in the purchase of futures, which were gambling transactions in which all parties engaged. It was held that this was a good defense because it was contrary to public policy for the courts to enforce payments of notes based on such a consideration. In Mullin v. Nash-El Paso Motor Company, Tex.Civ.App., 250 S.W. 472, 475, (Writ Ref.), the defense attempted to be asserted by Springer was in effect, sustained. The following decisions are to the same effect: Anderson v. O'Briant, Tex.Civ.App., 3 S.W.2d 842, 845, (Writ Ref.) ; Kahn v. Harris, Upham & Co., Tex. Civ.App., 247 S.W.2d 139, 142; Lewis v. Davis, 145 Tex. 468, 199 S.W.2d 146, 151; Garrison v. Garrison, Tex.Civ.App., 66 S.W.2d 451, 452. In 38 C.J.S. Gaming § 26, p. 97, it is said that money loaned and used for the purpose of gambling cannot be recovered.

Since Sahara was engaged in activities other than gambling and contends that it did not cash Springer's check for the purpose of enabling him to gamble on its devices, the check should be enforced if this be true. Sahara can make out a case by proof that it cashed the check and that it has not been paid and it is then entitled to judgment unless Springer establishes a defense. However, if, upon a trial, Springer establishes by a preponderance of the evidence, as he in effect contends, that Sahara cashed his check for the purpose of having the proceeds used to gamble in its Casino and that the money was so used, the check cannot be collected through the courts of Texas. 53 A.L.R.2d 372; 23 Am.Jur. 464,

471; 10 Tex.Jur. 250; 20 Tex.Jur. 685; 6 Tex.Jur. 859, 861; L.R.A.1918C 247; 38 C.J.S. Gaming § 26, p. 97; 83 A.L.R. 589. Also see Seeligson, Oliphant and Reed ·cases, supra.

We conclude that a fact issue was presented. The judgment is reversed and the ·cause is remanded.

WALTER, J., disqualified and not sitting.